# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

GERALD SAVAGE,

    Plaintiff,

v.

YVONNE JOLLEY, RNS, *et al.*,

    Defendants.

Civil Action No. JRR-23-2056

## MEMORANDUM OPINION

Plaintiff Gerald Savage filed this civil action pursuant to 42 U.S.C. § 1983. ECF No. 1. Savage alleges that his constitutional rights were violated while confined to Eastern Shore Community Hospital ("ESCH"). *Id.* The Defendants filed a Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment. ECF No. 11. Mr. Savage was advised of his right to file an opposition response to the motion and of the consequences of failing to do so. ECF No. 12. Mr. Savage filed nothing further. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the Defendants' Motion, construed as a Motion to Dismiss, shall be granted.

### I. BACKGROUND

Mr. Savage filed suit against three individuals: Yolanda, the "Charge Nurse" on "Nanticoke Tier;" Pam, a "CNA Nurse" on "Nanticoke Tier;" and a "70 year old security guard named 'Rudy.'" Compl., ECF No. 1 at 2-3. The Defendants identified two of these individuals as Yvonne Jolley, RNS, and Pam Airey, DCA.[1] ECF No. 11-1 at 1. Defendants were unable to

---

[1] The Clerk will be directed to update the docket to reflect Defendants' correct names, which will be utilized throughout this memorandum.

identify "a security guard fitting the name or description listed in Plaintiff's Complaint."[2]  *Id.*  Mr. Savage was committed to ESCH, "a secure State psychiatric hospital, for the purposes of conducting a competency evaluation ordered by the District Court of Maryland for Wicomico County in a theft case, as well as a second-degree assault case from Somerset County District Court."  ECF No. 11-1.  Mr. Savage resided at ESCH from September 26, 2022, until March 2, 2023.  *Id.*  His Complaint makes a host of allegations regarding his time at ESCH.  ECF No. 1.

First, Mr. Savage alleges that while at ESCH, "on more than one occasion" he was not permitted to sit and study the bible with other patients.  ECF No. 1 at 5.  Specifically, he alleges Charge Nurse Jolley prevented him from studying the bible with two other patients.  *Id.*  He argues that this amounts to a violation of his First Amendment rights.  *Id.*

Next, he states that he "was not giving [sic] a proper mental health treatment because of my race and religion."  *Id.*  No supporting facts are provided for this contention.[3]

On an unspecified day, Mr. Savage states that he was transported to a doctor's appointment by DCA Airey and "Rudy."  *Id.*  He states that the ankle shackles used while transporting him were too tight, which caused him to fall and injure his back causing an "immediate" loss of control of his bowels.  *Id.*  As a result, he states that he required diapers and Charge Nurse Jolley would only provide him one diaper per day.  *Id.*  He states that he had to sit in his own feces each day until 7:00 p.m. when he was permitted to shower.[4]  *Id.*  This was painful, causing "boils" and "bleeds," as well as embarrassment because other patients would make fun of him.  *Id.*

---

[2] For reasons discussed *infra*, "Rudy" will be dismissed from this action.
[3] No Defendants are identified as responsible for this allegation, nor are any supporting facts provided, and thus this claim is dismissed without prejudice and the Court will not consider it.
[4] Mr. Savage includes what appear to be two diary-style documents with his Complaint.  ECF No. 1 at 7-8.  These pages, dated December 6 and 7, 2022, detail the allegations regarding wounds from his diaper and his inability to shower.  *Id.*

Finally, he states that he was unable to walk while recovering from his back injury. *Id.* Because the staff forced him to line up for dinner, which he could not do, he missed meals on several occasions.[5] *Id.*

As relief, Mr. Savage is seeking three million dollars in punitive damages, and 2.5 million dollars in compensatory damages. *Id.* at 10.

In response, Defendants filed a Motion seeking dismissal of Mr. Savage's Complaint, or alternatively, summary judgment. ECF No. 11. First, they argue that dismissal is appropriate because Mr. Savage has not satisfied the pleading requirements of the Federal Rules of Civil Procedure because his Complaint "has little detail and instead relies on vague allegations." *Id.* at 5. Next, they argue that, to the extent Mr. Savage is suing the Defendants in their official capacities,[6] his claims are barred by the Eleventh Amendment. *Id.* at 6.

As to Mr. Savage's First Amendment claims regarding the practice of his religion, Defendants argue that "any limitation to his reading or Bible study were related to a limited hospital policy in place for safety and security." *Id.* at 7. Defendants additionally argue that Mr. Savage's claims do not amount to violations of either the Fifth or Fourteenth Amendment. *Id.* at 7. Further, they argue that Mr. Savage failed to file a claim with the Health Care Alternative Dispute Resolution Office ("HCADRO"), "thereby neglecting to satisfy a condition precedent to suit for medical injuries that were allegedly caused by a healthcare provider." *Id.* at 8. Additionally, they argue Mr. Savage has failed to comply with the Maryland Tort Claims Act. *Id.* at 9. Finally, they argue the Defendants are entitled to qualified immunity. *Id.* at 10.

---

[5] Mr. Savage includes a copy of a Resident Grievance with his Complaint which addresses missed meals. ECF No. 1 at 9. Again, Mr. Savage does not identify any Defendants he seeks to hold responsible for this allegation. Thus, this claim too shall be dismissed without prejudice.
[6] The Complaint does not expressly specify whether Defendants are sued in their official or individual capacities, however, the nature of the allegations and claims pertain to Defendants' respective actions while at their place of employment and related to their respective employment roles and responsibilities.

As noted, the motion is unopposed.

## II. STANDARD OF REVIEW

Defendants move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

In reviewing the motion, the Court accepts the well-pleaded allegations as true and in the light most favorable to Mr. Savage. *Twombly*, 550 U.S. at 555. "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view

4

such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

### III. DISCUSSION

#### A. Defendants Airey and "Rudy"

Mr. Savage has not stated a federal claim against Defendant Airey or Defendant "Rudy." The Court has thoroughly examined the Complaint and finds that it is insufficient and fails to adequately allege a claim. As to these two defendants, Mr. Savage states only: "I was transported to the doctor's appointment by [Defendant Airey] and a 70 year old security guard the old security guard put the shackles on my ankle too tight and I tripped over them and was injured. I was diagnosed with a back sprain and I immediately lost control of my bowels." ECF No. 1. No other factual details are provided, including a date when this incident occurred. No constitutional claim has been stated against Defendant Airey, as it is only alleged that she was involved in taking Mr. Savage to his doctor's appointment.

As to Defendant Rudy, merely placing shackles too tight, without more, does not amount to a constitutional violation. *Zellers v. Dillman*, No. 7:22-CV-00479, 2023 WL 6218287, at *5 (W.D. Va. Sept. 25, 2023) ("To the extent that [Defendant] can be responsible for not removing or modifying the restraints, the use of handcuffs, without more, is insufficient to constitute an Eighth Amendment violation."); *Price v. White*, No. 5:13-CV-P76-R, 2013 WL 4773969, at *5 (W.D. Kent. Sept. 4, 2013) ("[H]andcuffs and shackles are an ordinary part of prison life, and their use, without more, is neither cruel nor unusual."); *Teasley v. Barnette*, No. 5:05 CV 23-03-MU, 2005 WL 1806411, at *2 (W.D.N.C. July 25, 2005) ("Plaintiff's allegation that his handcuffs were

too tight does not state an Eighth Amendment claim for excessive force."); *Ireland v. Solano Cnty. Sheriff*, No. 2:08-CV-2102-RCF, 2009 WL 3055217, at *1 (E.D. Cal. Sept. 16, 2009) ("The ordinary use of handcuffs and other restraints, while undoubtedly uncomfortable, is part of the routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society.") (internal quotations omitted).  Further, there is no allegation that either Defendant was in any way involved with the fall Mr. Savage experienced, which ultimately resulted in his injuries. These Defendants are dismissed from this action, and all claims against them are dismissed.

### B. Defendant Jolley

Construing Mr. Savage's Complaint liberally, he appears to advance two claims against Defendant Jolley.  First, that she violated his First Amendment right to freely exercise his religion, and, second, that she rendered inadequate medical care by providing "one diaper a day."  ECF No. 1 at 5.  For the reasons stated below, neither claim can proceed.

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived him or her of a constitutional right.  *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999).  The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Two elements are essential to state a claim under § 1983: (1) plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  A defendant's own action—or failure to act—is required for liability under § 1983.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

As to Mr. Savage's claim that Defendant Jolley only provided one diaper per day, the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. CONST, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. Because there is no suggestion in the Complaint that Defendant Jolley utilized force of any kind, only an analysis of deliberate indifference is applicable here.

For convicted individuals, to establish liability, a two-part inquiry that includes both an objective and a subjective component must be satisfied. *See Raynor*, 817 F.3d at 127. Importantly, however, as noted above, Mr. Savage was awaiting a competency evaluation in two cases while at ESCH. Thus, it appears he was a pretrial detainee at the time when the incidents giving rise to his claims occurred.[7] This distinction is important because "pretrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm." *Short v. Hartman*, 87 F.4th 593, 604–605 (4th Cir. 2023). Indeed, "[t]he Fourteenth Amendment Due Process Clause protects pretrial detainees from

---

[7] Neither Mr. Savage, nor the Defendants, clearly articulate his custodial status. However, taking the facts in the Complaint in the light most favorable to Mr. Savage, the Court will analyze his claim as if he were a pretrial detainee at the time of the incidents in question, as that standard is purely objective, and thus considerably easier to satisfy.

7

'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Id.* at 608-609, quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (citations omitted). "[I]t is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable,'. . . that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly . . . . [I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Short*, 87 F.4th at 611 (citations omitted). However, "it is . . . not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611-12.

As to Mr. Savage's claim against Defendant Jolley, he simply states that she provided "one diaper a day." ECF No. 1 at 5. He further states that ESCH only permitted him to shower at 7:00 p.m. *Id.* As to Defendant Jolley specifically, the exhibits Mr. Savage includes state: "I was told by [Defendant Jolley] that I could take a bath until 7:00 p.m. The time is 3:30." *Id.* at 7. And "I was told by [Defendant Jolley] that I cant [sic] have a diaper today." *Id.* at 8. Mr. Savage provides no additional details on which the court might reasonably conclude that these actions by Defendant Jolley were "objectively unreasonable" in the face of an "unjustifiably high risk of harm." *Short*, 87 F.4th at 611. Mr. Savage does not allege that he was not offered other options to clean himself, or that he was denied other undergarments, or that the risk of harm related to delaying his shower was so obvious that it should have been known to Defendant Jolley. For these reasons, this claim is dismissed.

As to Mr. Savage's final claim, that Defendant Jolley violated his First Amendment right to freely exercise his religion, this claim too must be dismissed. A detainee or prisoner has a First Amendment right to free exercise of religion while in prison. *See Cruz v. Beto*, 405 U.S. 319, 322

(1972). To state a claim for violation of rights under the Free Exercise Clause, a plaintiff must demonstrate: (1) a sincere belief in a religion; and (2) a prison practice or policy that places a substantial burden on the plaintiff's ability to practice that religion. *See Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). A substantial burden is placed upon a prisoner's religious exercise when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981). Nevertheless, prison restrictions that impact on First Amendment rights may be constitutional if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 87, 91 (1987).

In *Firewalker-Fields v. Lee*, 58 F.4th 104 (4th Cir. 2023), the United States Court of Appeals for the Fourth Circuit held that a jail did not violate the First Amendment when it did not provide Jumah prayer services on Fridays, where it depended on outside volunteers and donations to provide group religious services and had not received any relating to Muslim services, and it did not permit inmate-led groups of any kind. *Id.* at 113, 120. It also held that the jail could permissibly bar maximum security inmates from attending in-person religious services for security reasons. *Id.* at 113, 118.

Mr. Savage does not allege that he was prevented from engaging in individual religious practices; rather, he simply alleges he was prevented from discussing the bible with other patients on certain unspecified occasions. Thus, this claim fails, because "the pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Firewalker-Fields*, 58 F.4th at 117 (noting that the relevant question is not whether the plaintiff "had the opportunity to engage in Friday Prayer on his terms, but rather whether he could generally engage in worship").

Mr. Savage's vague assertion that he was sometimes unable to study the bible in groups is insufficient to state a claim and is therefore dismissed without prejudice.[8]

### IV.  CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment (ECF No. 11), construed as a Motion to Dismiss, is granted, and Savage's Complaint is dismissed.

A separate Order follows.

Date:  May 10, 2024                                                                /S/
                                                                                            _____
                                                                                            Julie R. Rubin
                                                                                            United States District Judge

---

[8] Because all claims and Defendants will be dismissed for the foregoing reasons, the Court declines to address Defendants' additional arguments.  Further, to the extent Mr. Savage intended to raise any state law claims, they are dismissed without prejudice.  *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction.") (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966)).